IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION

| | | |
|---|---|---|
| MATTHEW BAHR and | ) | |
| CHRISTINE LUCERO, | ) | |
| on behalf of themselves and a class, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 16 CV 6664 |
| v. | ) | |
| | ) | Judge Joan H. Lefkow |
| THE GIRARD LAW GROUP, P.C. | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS

Defendant, The Girard Law Group, P.C. ("GLG"), pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6), hereby submits this memorandum in support of its motion to dismiss plaintiffs, Matthew Bahr's and Christine Lucero's, Class Action Complaint with prejudice.

## INTRODUCTION

Plaintiffs have filed this action against GLG alleging various violations of the Fair Debt Collection Practices Act ("FDCPA"). Remarkably, plaintiffs' claims against GLG are based entirely upon GLG serving a Notice and Demand for Possession (the "Notice") sent pursuant to requirements imposed by §§ 9-102 *et. seq.* of the Illinois Code of Civil Procedure, 735 ILCS 5/9-102 *et. seq.*, the contents of which do not violate the FDCPA. Plaintiffs' claims to the contrary engage in precisely the type of "fantastic conjecture" in interpreting the Notice that the law prohibits.

Further, as to plaintiffs' claim that the Notice violates § 1692g(a)(3) of the FDCPA because it requires them to dispute the debt in writing, that argument is not only incorrect as a matter of law, but also, fails to allege any concrete harm that would confer them with standing to sue.

## BACKGROUND

Plaintiffs are a married couple that owned a condominium unit in a building located at 4908 N. Springfield Ave. in Chicago, which is owned by the 4900 Springfield Condominium Association (the "Association"). [Doc. # 1, ¶¶ 8,9]. Defendant, The Girard Law Group, P.C. ("GLG") is a law firm located in Chicago, Illinois. [Doc. # 1, ¶ 5; Doc. # 1-1, p. 2]. Plaintiffs' claims against GLG stem from a Notice and Demand for Possession sent to the plaintiffs dated June 26, 2015 (the "Notice"). (Doc. # 1-1, pp. 4-6). The Notice is signed by Sunny Park as Agent for the Association. [Id., p. 5]. The Notice states that it is being sent pursuant to § 9-102 of the Illinois Code of Civil Procedure, which is the Illinois Forcible Entry and Detainer Act, 735 ILCS 5/9-102. [Id., p. 4]. GLG is alleged to have mailed the Notice to the plaintiffs. [Doc. # 1, ¶ 14].

Plaintiffs have asserted a number of claims against GLG for alleged violations of the FDCPA. The claims are not separated into separate counts and require the reader to decipher the statutory basis for plaintiffs' various theories from a number of paragraphs that are lumped together. Plaintiffs' allegations basically consist of five separate claims that are discussed in §§ II.A through II.E of the Argument section of this brief below.

## ARGUMENT

## I.    LEGAL STANDARD.

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. Fed.R.Civ.P. 12(b)(6); *Fries v. Helsper*, 146 F.3d 452, 457 (7th Cir. 1998). The purpose of such a motion is to "streamline litigation by dispensing with needless discovery and fact-finding," *Neitzke v. Williams*, 109 S.Ct. 1827, 1832 (1989), and to allow the court to determine "at the outset of the litigation, before costly discovery is undertaken, whether the plaintiff has any tenable theory or basis

2

of suit, so that if he does not, the case can be got rid of immediately without clogging the court's docket and imposing needless expense on the defendant." *Ryan v. Mary Immaculate Queen Center*, 188 F.3d 857, 860 (7th Cir. 1999).

As explained by the United States Supreme Court, in order to withstand a motion to dismiss a complaint must provide "more than labels and conclusions" because "a formulaic recitation of the elements of a cause of action" will not suffice. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007). A complaint must include enough factual allegations to "raise a right to relief above a speculative level." *Id.* at 1965. In *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009), the Supreme Court held that courts "are not bound to accept as true a legal conclusion couched as a factual assertion." *Iqbal* explained that the analysis of whether a claim has been properly pled should begin with the court identifying, and then disregarding, the pleader's conclusory assertions which are not entitled to a presumption of truth. *Iqbal*, 129 S.Ct. at 1950. This will enable the court to determine if the "well-pleaded factual allegations . . . plausibly give rise to an entitlement of relief." *Id.*

District courts may also look to exhibits attached to a complaint in deciding a motion to dismiss under Rule 12(b)(6). *Abcarian v. McDonald*, 617 F.3d 931, 933 (7th Cir. 2010). Where plaintiff's factual allegations in the body of the complaint are contradicted by the attached written exhibits, the exhibits trump the allegations. *Id.* In this regard, "[a] plaintiff may plead himself out of court by attaching documents to the complaint that indicate that he is not entitled to judgment." *In the Matter of Wade*, 969 F.2d 241, 249 (7th Cir. 1992).

Additionally, pursuant to Rule 12(b)(1), a plaintiff is required to sufficiently allege standing to sue under Article III of the Constitution in order to confer the district court with subject matter jurisdiction. *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). For pleading purposes, courts

3

apply the same analysis to facial challenges to standing under Rule 12(b)(1), as when they review whether a complaint adequately states a claim by requiring the plaintiff to plead "each element of standing in the same way as any other matter on which the plaintiff bears the burden of proof." *Id*. "It therefore follows that the *Twombly-Iqbal* facial plausibility requirement for pleading a claim is incorporated into the standard for pleading subject matter jurisdiction. *Id*. at 174.

## II.     PLAINTIFFS CANNOT STATE A CAUSE OF ACTION AGAINST GLG UNDER THE FDCPA.

The test for whether a collection letter violates the FDCPA is whether the letter, *taken as a whole*, would confuse the unsophisticated consumer about his rights. *Zemeckis v. Global Credit & Collection Corp.*, 679 F.3d 632, 636 (7th Cir. 2012) (dismissal of FDCPA claim as a matter of law is proper when it is apparent from a reading of the letter that not even a fraction of the population would be misled by it); *Durkin v. Equifax Check Serv.*, 406 F.3d 410, 414 (7th Cir. 2005). While the "unsophisticated consumer" standard is meant to protect a "hypothetical uninformed or naive consumer, it admits an objective element of reasonableness." *Jang v. A.M. Miller & Assoc.*, 122 F.3d 480 483-84 (7th Cir. 1997). In other words, "the court need not consider the debtor to be a fool or an idiot." *Young v. Meyer & Njus, P.A.*, 953 F.Supp. 238, 240 (N.D. Ill. 1997).

The "unsophisticated consumer" standard is an objective one, and a court will disregard "unrealistic, peculiar, bizarre, and idiosyncratic interpretations of collection letters." *Petit v. Retrieval Masters Creditors Bureau, Inc.*, 211 F.3d 1057, 1060 (7th Cir. 2000). The FDCPA is not violated by a dunning letter that is susceptible to an ingenuous misreading, for then every dunning letter would violate the statute. *Id*. at 1062. The FDCPA protects the unsophisticated consumer, but not the irrational one. *Id*. Nor does the FDCPA require that a debt collector quote or recite the

language of the statute in his letter verbatim. *Emanuel v. American Credit Exchange*, 870 F.2d 805,

808 (2nd Cir. 1989). Accordingly, a court must read a dunning letter in its entirety, not seek out

isolated words or phrases that absent context, might confuse. *Seplak v. IMBS, Inc.*, 1999 U.S. Dist.

LEXIS 2106, * 9 (N.D. Ill.). If the letter, taken as a whole, could not confuse the unsophisticated

consumer's understanding of his validation rights, it cannot give rise to liability. *Id*.

A.  **The Notice's 30-Day Validation Provision Is Not "Overshadowed" By Its Remaining Text.**

Plaintiffs first claim is that the Notice violates §§ 1692g(a) and 1692g(b) of the FDCPA

because it "demands payment from plaintiffs prior to the expiration of the statutorily-mandated 30-

day dispute period under § 1692g." [Doc. # 1, ¶¶ 28-31]. However, the letter does nothing of the

sort. The Notice first provides plaintiff with a demand for payment that states in pertinent part:

> THIS IS YOUR NOTICE THAT PAYMENT IN FULL OF THE AMOUNT STATED ABOVE IS DEMANDED OF YOU, AND THAT UNLESS YOUR PAYMENT OF THE FULL AMOUNT IS MADE IN CERTIFIED FUNDS . . . ON OR BEFORE THE EXPIRATION OF THE THIRTY (30) DAYS AFTER THE DATE OF MAILING OF THIS NOTICE IS DEEMED EFFECTIVE UNDER STATE LAW, THE ASSOCIATION THROUGH MY OFFICE MAY INSTITUTE AN ACTION TO TERMINATE YOUR RIGHT TO POSSESSION OF THE PREMISES. [Doc. # 1-1, p. 4].

This demand is then followed by a validation notice conspicuously displayed on the first and second

page of the Notice which explains as follows:

> FEDERAL LAW GIVES YOU THIRTY DAYS AFTER YOU RECEIVE THIS LETTER TO DISPUTE THE VALIDITY OF THE DEBT OR ANY PART OF IT. YOUR DISPUTE MUST BE IN WRITING. IF YOU DON'T DISPUTE IT WITHIN THAT PERIOD, WE'LL ASSUME THAT THE DEBT IS VALID. IF YOU DO DISPUTE THE DEBT, WE WILL FURNISH YOU WITH THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR, IF THE ORIGINAL CREDITOR IS DIFFERENT FROM THE CURRENT CREDITOR. IF YOU REQUEST PROOF OF THE DEBT OR THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR WITHIN THE THIRTY-DAY PERIOD THAT BEGINS

WITH YOUR RECEIPT OF THIS DEMAND, THE LAW REQUIRES ME TO SUSPEND MY EFFORTS (THOUGH LITIGATION OR OTHERWISE) TO COLLECT THE DEBT UNTIL I MAIL THE REQUESTED INFORMATION TO YOU. [Id., pp. 4-5].

The language in the Notice here closely resembles the language in a model collection letter offered by the Seventh Circuit in *Bartlett v. Heibel*, 128 F.3d 497, 501 (7th Cir. 1997). In *Bartlett*, the Seventh Circuit held that a demand for immediate payment in a collection letter is not a *per se* violation of the FDCPA as long as it is qualified and explained elsewhere in the letter. *Id.* In doing so, it offered an example of a letter that if followed would serve as a "safe harbor" for debt collectors. *Bartlett's* model letter contained a demand that the debtor, within one week of the date of the letter, either pay the balance due or contact the creditor to arrange payment, which was followed by the statement: "If you do neither of these things, I will be entitled to file a lawsuit against you, for collection of the debt, when the week is over." *Id.* The Court concluded that such language was acceptable because it was clarified later in the letter by a validation notice which advised the debtor of his right to dispute and request proof of the debt. *Id.* at 502. That notice further advised the debtor that if a request for proof is made within 30 days of receipt of the letter, the law "requires me to suspend my efforts (through litigation or otherwise) to collect the debt until I mail the requested information to you." *Id.*

Similarly, in *Jacobson v. Healthcare Financial Services, Inc.*, 516 F.3d 85, 87 (2nd Cir. 2008), a collection agency sent a letter to a debtor that stated:

IF YOUR PAYMENT OR NOTICE OF DISPUTE IS NOT RECEIVED IN THIS OFFICE WITHIN 30 DAYS, WE SHALL RECOMMEND FURTHER ACTION BE TAKEN AGAINST YOU TO COLLECT THIS OUTSTANDING BALANCE.

The debtor argued that the letter violated § 1692g(a)(3) because "the statement that further action

would be taken unless payment or a notice of dispute was submitted 'within 30 days' casts doubt on the starting date for the thirty day period." *Id*. at 92. The Second Circuit held that there was no uncertainty created by this statement in light of the validation notice contained in the letter. *Id*. Specifically, the court explained:

> While the letter is, therefore, perhaps ambiguous as to when the thirty-day period begins, the validation notice clarifies any possible ambiguity. It contains a clear and accurate statement of the starting date, informing [the debtor] that he has "30 days from receiving this notice" to submit the notice of dispute . . . The validation notice adequately clears up any ambiguity created by the letter as to the starting date for the thirty-day period. *Id*. at 93.

Just as the letters in *Bartlett* and *Jacobson*, there is nothing confusing or misleading about the Notice in the instant case. The Notice's demand for payment seeks payment "ON OR BEFORE THE EXPIRATION OF *THE THIRTY (30) DAYS* AFTER THE DATE OF MAILING OF THIS NOTICE . . ." [Doc. # 1-1, p. 4 (emphasis added)]. The language "*THE* THIRTY (30) DAYS" refers to, and is explained by, the validation notice contained in the following paragraphs that states:

> FEDERAL LAW GIVES YOU THIRTY DAYS AFTER YOU *RECEIVE* THIS LETTER TO DISPUTE THE VALIDITY OF THE DEBT OR ANY PART OF IT.
>         \*                    \*                    \*
> IF YOU REQUEST PROOF OF THE DEBT OR THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR WITHIN *THE* THIRTY-DAY PERIOD *THAT BEGINS WITH YOUR RECEIPT OF THIS DEMAND*, THE LAW REQUIRES ME TO SUSPEND MY EFFORTS (THOUGH LITIGATION OR OTHERWISE) TO COLLECT THE DEBT UNTIL I MAIL THE REQUESTED INFORMATION TO YOU. [Id., pp. 4, 5 (emphasis added)].

When properly read as whole, the Notice consistently communicates plaintiffs' validation rights.

### B. The Notice's Requirement That Plaintiffs Dispute The Debt In Writing Does Not Give Rise To A Claim Under The FDCPA.

Plaintiffs' next claim is that the Notice violates § 1692g(a)(3) of the FDCPA when it imposed a writing requirement on plaintiffs to dispute the debt. This claim is also without merit.

7

1.      **The FDCPA requires a consumer's dispute of the debt to be in writing.**

The Seventh Circuit has not decided whether § 1692g(a)(3) of the FDCPA requires a consumer to dispute a debt in writing in order for the debt to not otherwise be assumed to be valid. Other Circuit Courts have addressed the question with differing results. *Compare, Graziano v. Harrison*, 950 F.2d 107, 122 (3rd Cir. 1991) (writing required) with *Camacho v. Bridgeport Financial, Inc.*, 430 F.3d 1078, 1082 (9th Cir. 2005) (writing not required). District courts in the Seventh Circuit have also answered the question differently. *Compare, Ingram v. Corp. Receivables, Inc.*, 2003 U.S. Dist. LEXIS 7475, * 15-16 (N.D. Ill.) (writing required) with *Chung v. National Check Bureau, Inc.*, 2005 U.S. Dist. LEXIS 15216, * 4 (S.D. Ind.) (writing not required). As explained below, courts that have imposed a writing requirement represent the better reasoned view.

In *Graziano*, the Third Circuit held that although the statutory language of § 1692g(a)(3) does not expressly require a debtor's dispute of a debt be in writing, such a requirement must be read into the statute to be effective and avoid absurd results. *Graziano*, 950 F.2d at 112. Specifically, the court noted that §§ 1692g(a)(4), (a)(5) and 1692g(b) all impose writing requirements which obligate the debt collector to cease collection activity until it has verified the debt. *Id*. It then explained:

> Adopting [a strict literal] reading of the statute would thus create a situation in which, upon the debtor's non-written dispute, the debt collector would be without any statutory ground for assuming that the debt was valid, but nevertheless would not be required to verify the debt or to advise the debtor of the identity of the original creditor and would be permitted to continue debt collection efforts. We see no reason to attribute to Congress an intent to create so incoherent a system. We also note that there are strong reasons to prefer that a dispute of a debt collection be in writing: a writing creates a lasting record of the fact that the debt has been disputed, and thus avoids a source of potential conflicts. We therefore conclude that subsection (a)(3), like subsections (a)(4) and (a)(5), must be in writing. *Id*.

Courts in the Northern District of Illinois have followed *Graziano's* reasoning and rejected

8

contrary authority from other jurisdictions. *See, Jolly v. Shapiro*, 237 F.Supp.2d 888, 894 (N.D. Ill. 2002). *Jolly* was followed in another Northern District of Illinois opinion in *Ingram v. Corp. Receivables, Inc.*, 2003 U.S. Dist. LEXIS 7475, * 16-17 (N.D. Ill.). *Ingram* first noted that "a number of courts within the Seventh Circuit have held that a writing is required to effectively dispute a debt." *Id.* (citing five cases; including two others from the N.D. Ill.). It then considered plaintiff's argument that the contrary authorities he cited should be followed because they more closely resembled the Seventh Circuit's approach to statutory construction that counsels to "interpret statutes as they are written." *Id.*[1] In rejecting the plaintiff's argument, the court explained that "this rule of strict adherence to statutory language yields when the literal application of a statute will produce a result demonstrably at odds with the intentions of the drafters." *Id.* (citations omitted). The court reasoned that literal application of § 1692g(a)(3) would undermine the purpose contemplated by § 1692g(a) and (b) by causing unsophisticated consumers to give only oral notification of disputes of debts, and by doing so, unintentionally foregoing the additional important rights triggered by a written dispute in §§ 1692g(a)(4) and (5) – an "incoherent result." *Id.* at * 19.

> **2.** **Even if the FDCPA does not impose a writing requirement on a consumer disputing a debt, plaintiffs have suffered no actual injury by the Notice's imposition of such a requirement and lack standing to sue.**

The split in authority as to whether § 1692g(a)(3) imposes a writing requirement may be nothing more than an illusory issue in light of the U.S. Supreme Court's recent decision in *Spokeo v. Robins*. 136 S.Ct. 1540, 1549-50 (2016). In *Spokeo*, the Supreme Court held that "Congress

---

[1] This same argument was advanced and found convincing by the Ninth Circuit in *Camacho*, the Second Circuit in *Hooks v. Moore*, 717 F.3d 282 (2nd Cir. 2013), and a handful of district court cases from Indiana which chose to follow *Camacho*. The rationale of these cases have been repeatedly rejected by courts in the Northern District of Illinois in favor of *Graziano* which represents the better reasoned view.

cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who otherwise would not have standing." *Spokeo*, 136 S.Ct. at 1547-48. Rather, to establish standing, the plaintiff must show "an injury in fact" that is <u>*both*</u> "particularized and concrete." *Id.* at 1548. The Court stated that a "concrete" injury must be "*de facto*; that is it must actually exist," and that the injury must be "real, and not abstract." *Id*. Thus, a "bare procedural violation" of a statute is not automatically enough to satisfy Article III's concreteness requirement. *Id*. at 1549.

Plaintiff has failed to allege any concrete injury resulting from the Notice's imposition of a writing requirement. Indeed, assuming oral notices are permitted under the FDCPA, such notice would have a very limited and different legal consequence than a written notice. Section 1692g(b) provides that if the consumer notifies the debt collector of a dispute *in writing* within the 30-day period, the debt collector must cease collection activities until he obtains the verification or information required by §§ 1692g(a)(4) and (a)(5) and provides the same to the consumer. 15 U.S.C. § 1692g(b). However, if the statute is interpreted to allow the consumer to also dispute the debt orally and the consumer does so, the debt collector is under no obligation to cease all collection efforts, obtain verification of the debt, or provide *any* information to the consumer. *Id*.

Thus, even assuming oral disputes of a debt are permitted, the debt collector's only obligation upon receipt of such a dispute under § 1692g(a) is to no longer assume that the debt is valid. However, under such circumstances, the debt collector does not have to stop collection efforts or obtain verification of the debt, nor is it obligated to provide the consumer with *any* information – again, only a <u>*written*</u> request would trigger such obligations. 15 U.S.C. §§ 1692g(a)(4), (5); 1692g(b). The result is that even assuming that the Notice's imposition of writing requirement technically runs afoul of the FDCPA because it fails to advise plaintiffs that they can dispute a debt

orally, this is nothing more than a "bare procedural statutory violation," which did not cause the plaintiffs any harm or risk of harm that could provide them with Article III standing.

**C.    The Notice Complies With The FDCPA By Advising Plaintiffs That If They Request Proof Of The Debt, Collection Activity Will Cease Until That Information Is Provided.**

Plaintiffs also allege that the Notice violates §§ 1692g(a)(3) (sic)[2] and 1692g(b) of the FDCPA because it fails to notify them that if they dispute the debt within the 30-day period, collection activity will cease until or unless verification of the debt is obtained and mailed to them. [Doc. # 1, ¶¶ 44, 50]. However, the Notice specifically states in pertinent part:

> FEDERAL LAW GIVES YOU THIRTY DAYS AFTER YOU RECEIVE THIS LETTER TO DISPUTE THE VALIDITY OF THE DEBT OR ANY PART OF IT. YOUR DISPUTE MUST BE IN WRITING.
> *                       *                       *
> IF YOU REQUEST PROOF OF THE DEBT OR THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR WITHIN THE THIRTY-DAY PERIOD THAT BEGINS WITH YOUR RECEIPT OF THIS DEMAND, THE LAW REQUIRES ME TO SUSPEND MY EFFORTS (THOUGH LITIGATION OR OTHERWISE) TO COLLECT THE DEBT UNTIL I MAIL THE REQUESTED INFORMATION TO YOU. [Doc. # 1-1, pp. 4, 5 (emphasis added)].

Plaintiffs do not have any valid claim that the Notice fails to advise them that if they requested proof of the debt, collection efforts would be suspended until proof of the debt is mailed to them. That is exactly what the above language states. Rather, plaintiffs appear to be arguing that the above language violates the FDCPA because it advises them that they can request "proof of the debt" as opposed to advising they can "dispute the debt," and that the former does not trigger an obligation on the part of a debt collector to cease collection activity until it mails verification of the

_____

[2]Plaintiffs' citation to § 1692g(a)(3) in support of this claim makes no sense in light of their other claim in ¶ 38 of the Complaint that this section permits consumers to orally disputes a debt, and that the Notice violated this section when it stated "Your dispute must be in writing."

debt to the consumer. [Doc. # 1, ¶¶ 47, 48]. The Seventh Circuit seems to disagree. It used the same "if you request proof of the debt" language contained in the Notice to advise plaintiff of a proper way to trigger his validation rights in its model safe harbor letter. *Bartlett*, 128 F.3d at 502.

Moreover, the same argument the plaintiff makes here was flatly rejected in *Gruber v. Creditors Protection Services, Inc.*, 2013 U.S. Dist. LEXIS 68379, * 5-6 (E.D. Wis.). In that case, the collection letter at issue stated in pertinent part : "IF YOU NOTIFY THIS OFFICE IN WRITING 30 DAYS FROM RECEIVING THIS NOTICE, THIS OFFICE WILL OBTAIN VERIFICATION OF THE DEBT OR OBTAIN A COPY OF A JUDGMENT AND MAIL YOU A COPY OF SUCH JUDGMENT OR VERIFICATION." *Id*. at * 2. The plaintiff argued, as the plaintiffs do here, that the omission of the phrase "that the debt, or any portion thereof, is disputed" from the above sentence would cause an unsophisticated consumer to think he could trigger the validation requirement by merely "requesting" verification of the debt. *Id*. at * 5. The court held that "I request that you verify the existence of the debt" is synonymous with "I dispute the debt" in the FDCPA context, and therefore, the letter could not possibly violate § 1692g. *Id*. at * 6.

**D.     The Notice's Alleged Failure To Notify The Plaintiffs That A Written Request Was Required To Obtain The Name And Address Of The Original Creditor, If Different From The Current Creditor, Does Not Violate The FDCPA.**

Plaintiffs also allege that the Notice violates § 1692g(b) of the FDCPA by allegedly not advising them that to obtain the name and address of the original creditor, they must request that information in writing. [Doc. # 1, ¶ 51]. However, § 1692g(a)(5) states:

§ 1692g.     Validation of debts

Notice of debt; contents

(a) Within five days after the initial communication with a consumer in connection

12

with the collection of any debt, a debt collector shall, *unless the following information is contained in the initial communication* or the consumer has paid the debt, send the consumer a written notice containing –

\*            \*            \*

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor . . . 15 U.S.C. § 1692g(a)(5).

Courts in this district and others have held that a debt collector is not required to include the language in § 1692g(a)(5) in its written notice to the debtor, if the original creditor is the same as the current creditor. *McCabe v. Crawford & Company*, 210 F.R.D. 631, 639 (N.D. Ill. 2002). In *McCabe*, the plaintiff argued that the debt collector failed to provide a statement regarding obtaining the name and address of the original creditor in its letter pursuant to § 1692g(a)(5) of the FDCPA. *Id*. After noting that this language is required in a dunning letter only where the original creditor differs from the present creditor, the court dismissed plaintiff's claim as a matter of law because the original creditor was the same as the current creditor. *Id*.

The court in *Shimek v. Weissman, Nowack, Curry & Wilco, P.C.*, 323 F.Supp.2d 1344, 1348-49 (N.D. Ga. 2003), likewise held that there is no need to include § 1692g(a)(5) language in a letter when the current creditor is the same as the original creditor. The court noted that the plaintiff had not cited any authority that requires the inclusion of such language where the debt collector is acting on behalf of the original creditor. *Id*, at 1349. It further explained that under the plain language of the statute, there is no need to provide information about a non-existent original creditor when the creditor identified in the letter is, in fact, the original creditor. *Id*. at 1348. The court concluded that a statement regarding obtaining the name and address of the original creditor was unnecessary because the defendant had already complied with the plain language of the FDCPA by providing the name of the original creditor in his letter. *Id*. at 1349, *citing* 15 U.S.C. § 1692g(a)(2).

Here, plaintiffs have not pled any facts which would trigger any necessity for inclusion of § 1692g(a)(5) language into the Notice. In fact, plaintiffs' allegations, coupled with the language of the Notice itself, confirm that the Notice is from the original creditor. Plaintiffs specifically allege that in early 2015, they incurred an alleged debt in connection with the Property *to the 4900 Springfield Condominium Association*, and that the Association hired GLG to collect the debt who is then alleged to have sent the Notice. [Doc. # 1, ¶¶ 9-11, 14].

The Notice also states it is from the Association, is signed by the Association's Agent, and identifies the Association therein as the possessor of the lien on the premises and the party to whom payment is owed for past due assessments as the property owner under its Declarations and By-Laws. [Doc. # 1-1, pp. 4-5]. Indeed, Illinois law pursuant to which the Notice was sent, *requires* the Association or its agent or attorney as the entity entitled to possession to sign that document. 735 ILCS 5/9-104.1(a). In short, plaintiffs do not and cannot allege anywhere in their Complaint that the current creditor identified in the Notice (4900 Springfield Condominium Association) is different from the original creditor, and have actually pled allegations and attached exhibits to the contrary.

### E. The Notice Is Not Misleading Because It States That It Is From Sunny Park As Agent Of The Association.

In perhaps their most bizarre, if not circular argument, plaintiffs assert that GLG violated §§ 1692e, 1692e(10), 1692e(14) of the FDCPA because the Notice communicated that it was from Sunny Park as Agent for the Association when in fact the letter was from GLG. [Doc. # 1, ¶¶ 67-68]. As a threshold matter, even assuming that some "misrepresentation" occurred, this claim should be dismissed because plaintiffs do not and cannot allege it was a material one in any respect. *See, Hahn v. Triumph Partnerships, LLC*, 557 F.3d 755, 757-58 (7th Cir. 2009). To state a claim for liability

14

under § 1692e,the plaintiff must plead facts that show it is plausible that a reasonable "unsophisticated consumer" would have done something differently but for the allegedly confusing statement – in other words, plaintiff must plead facts demonstrating materiality. *Marciuleviciene v. Elmhurst Lake Apt., LLC*, 2012 U.S. Dist. LEXIS 86424, * 4 (N.D. Ill.).

The gist of plaintiffs claim seems to be that the Notice violates the FCDCPA's "true name" requirement under 15 U.S.C. § 1692e(14). However, "the aim of § 1692e(14) is to prevent debt collectors from using a name other than their own in an attempt to mislead or deceive a consumer." *Weinstein v. Fink*, 2001 U.S. Dist. LEXIS 2075, * 14 (N.D. Ill.). Here, the Notice is signed and certified as being from Sunny Park as Agent for the Association. [Doc. # 1-1]. There is no allegation in the pleadings that this name on the Notice is not the "true name" of the party asserting the Notice. Although GLG is alleged to have mailed the Notice, that is not inconsistent with the Association through its Agent being its signatory. Indeed, as the party asserting the lien rights therein, the Association, or its agent or attorney on its behalf was *required* to sign the Notice by Illinois statute. 735 ILCS 5/9-104.1(a). There is no "true name" violation.

## CONCLUSION

For each of the foregoing reasons, defendant, GLG requests plaintiffs' Complaint to be dismissed with prejudice.

Respectfully submitted,

THE GIRARD LAW GROUP, P.C.

James J. Sipchen
Quinn P. Donnelly
PRETZEL & STOUFFER, CHARTERED
One South Wacker Drive; Suite 2500
Chicago, Illinois 60606-4673
(312) 346-1973

By: /s/James J. Sipchen
        One of its attorneys

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that Defendant's Motion to Dismiss and Memorandum in Support of its Motion to Dismiss was filed electronically this 24th day of August, 2016. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's electronic system.

Robert W. Harrer
The Law Office of Robert W. Harrer, P.C.
111 W. Washington Street
Suite 1360
Chicago, IL 60602
312-600-8466
Fax: 312-610-5646
rob.harrer@harrerlaw.com


Mario Kris Kasalo
The Law Office of M. Kris Kasalo, Ltd.
20 North Clark Street
Suite 3100
Chicago, IL 60602
312-726-6160
Fax: 312-698-5054
mario.kasalo@kasalolaw.com


/s/James J. Sipchen_____
Attorney Name, IL Bar No. ARDC6226113
PRETZEL & STOUFFER, CHARTERED
One South Wacker Drive, Suite 2500
Chicago, Illinois 60606
(312) 578-7422 - Phone
(312) 346-8242 - Fax
jsipchen@pretzel-stouffer.com
*Attorneys for The Girard Law Group, P.C.*